UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ARCHIE J. TAYLOR,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CAUSE NO. 3:24cv583 DRL<br>3:22cr70 DRL |

OPINION AND ORDER

Archie J. Taylor, a prisoner without a lawyer, filed a petition to vacate his sentence under 28 U.S.C. § 2255, claiming his counsel was ineffective and that he was improperly sentenced. He asks the court to vacate his sentence, provide him a mental health evaluation, and allow him to enter into a new plea agreement with the government. After reviewing the record and conducting a limited evidentiary hearing, the court denies the petition.

BACKGROUND

Between September 22 and 25, 2022, Mr. Taylor robbed three convenience stores and one bank at gunpoint. He brandished a firearm, threatened employees and customers, and pistol-whipped one victim, severely injuring him. In January 2023, Mr. Taylor pleaded guilty with a plea agreement to five counts of the indictment—three counts of interfering with commerce by threat or violence, 18 U.S.C. § 1951; one count of bank robbery, 18 U.S.C. § 2113(a); and one count of brandishing a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii).

On July 11, 2023, the court sentenced Mr. Taylor to an aggregate prison term of 228 months (144 months on each of the first four counts to be served concurrently and a consecutive

84 months on the fifth count in accordance with 18 U.S.C. § 924(c)(1)(D)(ii)). No direct appeal was taken. Mr. Taylor filed this § 2255 petition, claiming his counsel inadequately presented his mental health at sentencing and failed to file a direct appeal despite multiple requests, and adding that the court improperly sentenced him under 18 U.S.C. § 924(c). The court conducted an evidentiary hearing on the limited question of whether Mr. Taylor timely requested an appeal.[1]

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to *habeas corpus* relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would

---

[1] Pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings and 18 U.S.C. § 3006A, the court appointed counsel for Mr. Taylor for the limited purpose of representing him at the evidentiary hearing. The court thanks counsel for his able representation. The court granted Mr. Taylor's motion for counsel for the evidentiary hearing only [47, 68]. Outside of an evidentiary hearing, there is generally no right to counsel in § 2255 proceedings. *Rauter v. United States,* 871 F.2d 693, 695 (7th Cir. 1989).

2

entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific will not suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show that the petitioner is not entitled to relief, the court need not hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). The court held an evidentiary hearing only on Mr. Taylor's allegation that his counsel failed to file a direct appeal because the petition and record clearly show he is not entitled to relief on his other claims.

## DISCUSSION

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993). The law "presume[s] that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted).

A. *Mental Health.*

Mr. Taylor's first and most detailed argument centers on how his counsel addressed his mental health. Despite representations under oath at his plea hearing that his counsel had done everything he wished, he now says his counsel should have requested a competency hearing, investigated his mental health further, presented more information to the court, and hired an expert to testify at sentencing. None of these complaints constitutes ineffective assistance.

Mr. Taylor argues that his counsel failed to conduct a thorough and complete mitigation investigation. "When the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quotations and citation omitted). Defense counsel need only conduct "reasonable investigations." *Strickland*, 466 U.S. at 691. A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "A reasonable investigation is not [] the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct." *Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998).

Mr. Taylor has not met his burden to show counsel's performance fell below the constitutional standard or that it caused prejudice. For one, Mr. Taylor hasn't explained what an "investigation would have produced." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017) (quotation omitted). He refers to a failure to subpoena state records, but he hasn't told the court what these records would have shown or why there were important. Instead, he seems to suggest

4

that his counsel was aware of his extensive mental health history. He hints that a more in-depth interview would have highlighted the severity of his mental health issues and allowed counsel to present his health more fully to the court. But he doesn't explain in any detail what a broader investigation would have uncovered, and the record at sentencing was fairly replete with information about his mental health already.

In retrospect, Mr. Taylor faults his counsel for not calling an expert to testify. Mr. Taylor "must demonstrate that an expert capable of supporting the defense was reasonably available at the time" of the proceeding. *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010); *see also Resnick v. United States*, 7 F.4th 611, 621 (7th Cir. 2021) (decision not to call a rebuttal expert wasn't ineffective, especially when the defendant didn't show an expert was reasonably available). In evaluating trial counsel's tactical decisions, the court views "strategic decisions—including whether to hire an expert—[as] entitled to a strong presumption of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quotation omitted). Mr. Taylor bears the burden to rebut the presumption and show "that counsel took an approach that no competent lawyer would have chosen." *Id.* The court must "entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quotation omitted). Counsel may decline to pursue lines of argument for tactical or strategic reasons. *See Dunn*, 594 U.S. at 740-41 (discussing possible reasons to not present certain defenses). Deciding whether to call an expert is a "paradigmatic example" of a presumably reasonable litigation decision that is "virtually unchallengeable." *Norweathers v. United States*, 133 F.4th 770, 778 (7th Cir. 2025). And here, Mr. Taylor doesn't indicate that an expert was readily available to testify, nor explains what an expert could have added to support a defense or an argument not already made.

5

To the extent Mr. Taylor says his counsel didn't argue his mental health as a mitigating factor at sentencing, the record disproves this. Both the government and Mr. Taylor's counsel addressed his mental health at sentencing—it was known to everyone. The government represented that Mr. Taylor had "significant mental health challenges" [54 Tr. 18]. Mr. Taylor's counsel presented the information in greater depth, explaining that he was first diagnosed at age 12 with mental health challenges and that his condition was "exacerbated by constant abuse from early childhood on" [*id.* 20]. He explained Mr. Taylor's family history of mental health problems and then noted that he had been "diagnosed as a paranoid schizophrenic for many years" [*id.*]. He requested a lower sentence and mental health treatment and observed that Mr. Taylor hadn't received any real treatment despite spending time in a mental health unit while incarcerated before the federal offense [*id.* 20-21]. In briefing, his trial counsel emphasized that Mr. Taylor suffered "from long-standing mental health issues" with various diagnoses and a suicide attempt [35]. He provided medical treatment records [35-1]. The presentence report also provided information about his mental health. Based on this collective record, the court then thoroughly addressed this mitigation argument [54 Tr. 29-30; 37]. Mr. Taylor doesn't provide any more information that could have been uncovered, and no one could say on this record that his counsel failed to present his mental health to the court adequately, indeed smartly.

Mr. Taylor also says his counsel should have had him evaluated by a mental health practitioner, and he suggests that his counsel should have requested a competency hearing under 18 U.S.C. § 4241(a). To succeed on a § 2255 claim based on his competency, Mr. Taylor must show that "there [was] reasonable probability that he would have been found unfit had a hearing been held" to participate in the proceedings against him. *Warren v. Baenen*, 712 F.3d 1090, 1100

(7th Cir. 2013) (quotation omitted). "The fact that a person suffers from a mental illness does not mean that he's incompetent to stand trial." *Price v. Thurmer*, 637 F.3d 831, 833 (7th Cir. 2011). Actively participating in hearings often indicates that any mental health limitations are not so severe as to render a defendant incompetent. *See United States v. Truett*, 109 F.4th 996, 1000 (7th Cir. 2024) (noting that a defendant engaging in a colloquy about his mental health limitations suggested that his impairments did not render him incompetent).

A court may not accept a plea from or try an incompetent defendant, *Godinez v. Moran*, 509 U.S. 389, 396 (1993), and the need for competency extends "to the sentencing phase of a proceeding," *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991). An incompetent defendant is one "whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Yang v. United States*, 114 F.4th 899, 906 (7th Cir. 2024). A defendant is presumed to be competent unless proven otherwise. *United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir. 1994). Defense counsel has a duty to ensure that a client is "capable of making a rational choice among rationally understood possibilities." *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996) (quotation omitted). 18 U.S.C. § 4241 allows any party (or the court) to request a competency hearing to determine if a defendant is mentally competent.

Mr. Taylor hasn't shown a "reasonable probability that he would have been found unfit" to participate in the proceedings against him. *Warren,* 712 F.3d at 1100. He simply cites the hearing statute and says, without any basis, that "it is a standard practice" for cases like his to include a competency hearing.

Nor does the record support the need for a competency hearing. At his change of plea while under oath, Mr. Taylor disclosed a diagnosis of paranoid schizophrenia [53 Tr. 4]. The law approaches paranoid schizophrenia with caution because it can "affect a patient's ability to perceive reality." *United States v. Hardimon*, 700 F.3d 940, 943 (7th Cir. 2012). Recognizing this, the court considered this issue carefully. The court engaged Mr. Taylor in a discussion about his condition, and Mr. Taylor explained his medication regimen and ongoing symptoms [53 Tr. 4-9]. Mr. Taylor told the court that the medication managed his symptoms "for the most part" and didn't affect his ability to think clearly [*id.* 6]. *See Price*, 637 F.3d at 834 (if a defendant is being treated with antipsychotic drugs, the fact of a mental illness doesn't render him incompetent). Mr. Taylor told the court that the medicine didn't eliminate all his symptoms, but he understood the proceeding and answered the court's questions [53 Tr. 6-7]. He explained that he still heard voices sometimes, but the court confirmed he didn't hear voices at the hearing [*id.*]. This active and able participation in his plea colloquy and ability to provide "cogent answers to the court's questions" provided evidence of Mr. Taylor's competence. *Truett*, 109 F.4th at 1000.

Mr. Taylor's active engagement continued at sentencing, where he delivered an eloquent allocution, demonstrating to the court that he was an "articulate, intelligent person" [54 Tr. 22-25, 32]. He argues that there is an abundance of evidence of his irrational behavior, but the only things he provides specifically are his statements on his taped confession including "I'm just so tired" and "thank you for saving my life." Nothing in those statements is inherently indicative of a mental health challenge that was so severe as to render him incompetent. *See Woods v. McBride*, 430 F.3d 813, 819 (7th Cir. 2005) (drowsiness does not indicate incompetence). And Mr. Taylor's behavior throughout his case doesn't support his assertions now.

8

Additionally, while under oath at his change of plea hearing, Mr. Taylor denied that there was "anything that [trial counsel] did that [Mr. Taylor] didn't want him to do" [53 Tr. 10]. Instead, he confirmed that he was "fully satisfied with the job that [trial counsel had] done" [*id.*]. These affirmations in open court and under oath are "presumed truthful," *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000), and carry "a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Given contradictions between a motion and oral testimony under oath, the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to his admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quotations and brackets omitted). If Mr. Taylor believed his counsel should have requested an evaluation, he could have raised it at his plea.[2] Nothing shows on this record that he was in any way hampered during any proceeding from raising this subject.

Mr. Taylor also proffers no evidence that a lack of a competency hearing was prejudicial. *See Strickland*, 466 U.S. at 694. He asserts he was prejudiced because his incompetency would have caused the government to offer a more reasonable plea agreement. He does not submit any evidence or show in the record that there was a reasonable probability that he would have been found incompetent had a hearing been conducted, that his competency affected his plea or sentencing, or that he would have actually received a lower sentence. *See Warren*, 712 F.3d at 1100 (defendant hadn't provided any evidence suggesting there was a reasonable probability he would have been found unfit); *see also Day v. United States*, 962 F.3d 987, 994 (7th Cir. 2020) (requiring a showing of a reasonable probability of a lower sentence).

---

[2] Mr. Taylor's brief swipe at the "vague" factual basis likewise could have been raised at the plea.

9

Nor does he indicate that he wouldn't have pleaded guilty. He does not contest his guilt. He does not contest the calculation of the advisory sentencing guidelines. He does not contest any statutory minimum. He implies that, had he been deemed incompetent, the government would have sought a more favorable plea agreement. He says that he could have potentially gotten a "lesser sentence under the mandatory minimum" [*id.* 17], but such a suggestion is not just wishful but impossible. He provides no evidence for what a mental health evaluation would have found or that the government would have responded favorably in response by consenting to a lower sentence recommendation; nor does he present any evidence that he had a reasonable probability of receiving a lower sentence. *See Day*, 962 F.3d at 994.

Mr. Taylor has not shown, nor does the record indicate, that he lacked any understanding of the nature of the proceedings against him or was unable to assist in his defense. He mentions briefly that he wasn't fully aware, but he told the court under oath at the plea hearing that he understood what had to be true for him to be guilty and he believed he was guilty [53 Tr. 15]. In his plea and sentencing hearings, he was articulate—about his circumstances, the charges against him, and the jurisdictional elements of his other related offenses [*see, e.g., id.* Tr. 10-11, 15-19; 54 Tr. 22-25]. Mr. Taylor actively participated in the court's colloquy with him, suggesting that "his impairments did not preclude him from understanding the proceedings or assisting his counsel." *Truett*, 109 F.4th at 1000.

In short, Mr. Taylor hasn't shown any prejudice on his ineffective assistance of counsel claims for failing to investigate and present his mental health. *See Strickland*, 466 U.S. at 694. Because he hasn't shown any prejudice and the record shows that his counsel wasn't ineffective

when presenting his mental health as a mitigating factor at sentencing, the court denies his petition on this ground.

B. *Direct Appeal.*

Mr. Taylor next claims his counsel was ineffective because he failed to file a direct appeal, despite Mr. Taylor pleading to do so. A defendant who signs an appeal waiver as part of a plea agreement waives "only his ability to raise certain claims on appeal" and not the "right to *file* a notice of appeal." *United States v. Watson*, 48 F.4th 536, 539 (7th Cir. 2022). When a criminal defendant specifically instructs his lawyer to file a notice of appeal, the lawyer's failure to do so constitutes ineffective assistance of counsel. *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)); *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010)). This is the case "regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, 586 U.S. 232, 243-44 (2019). "To succeed on such a claim, however, a defendant must show that he actually requested his attorney file an appeal." *Gant*, 627 F.3d at 681. The request must be timely—within the 14-day deadline allotted by the rules. *United States v. Hirsch*, 207 F.3d 928, 931 (7th Cir. 2000); *see* Fed. R. App. P. 4(b)(1)(A). Otherwise, "relief is not available under § 2255." *Hirsch*, 207 F.3d at 931.

Mr. Taylor claims he wanted his counsel to file a direct appeal based on the failure to receive a competency evaluation. To his petition he attaches a handwritten declaration swearing under penalty of perjury that his counsel "failed to file an appeal on [his] behalf after [he] repeatedly asked him to file one" [46-1]. The government counters that Mr. Taylor failed to show that he asked his counsel to file an appeal within the 14-day deadline. The court held an

11

evidentiary hearing to determine whether Mr. Taylor requested, in a timely manner, that his trial counsel file a notice of appeal. *See Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994).

The court advised Mr. Taylor of his appeal rights and waiver, including the timeline that applied for any direct appeal, at the conclusion of his sentencing [53 Tr. 26-27, 29; 54 Tr. 37]. At the § 2255 evidentiary hearing, Mr. Taylor confirmed that he did not request a timely appeal. The court entered judgment in Mr. Taylor's case on July 13, 2023 [38], which meant he had until July 27, 2023 to file a timely notice of appeal. Fed. R. App. P. 4(b)(1)(A). Mr. Taylor testified that he called his trial counsel to discuss the possibility of filing an appeal on July 28, 2023. After a discussion, he testified that he was told there was nothing that could be done because the deadline passed. He didn't remember meeting with his counsel after that phone call.

Trial counsel's testimony affirmed that Mr. Taylor didn't seek a timely appeal, albeit with a slightly different sequence of events. Trial counsel testified that his general practice included making sure that the defendant understood the deadlines for filing a notice of appeal immediately after the sentencing hearing. Although trial counsel didn't specifically remember advising Mr. Taylor after his sentencing, he testified that there wasn't any reason to believe that he deviated from this practice. He testified that Mr. Taylor called his office on August 1, 2023—5 days after the deadline to appeal expired. They met the next day. During the meeting, trial counsel asked Mr. Taylor if there was anything that precluded him from contacting him earlier to seek an appeal, to determine if there was a basis for an extension of the deadline to file a notice of appeal. *See* Fed. R. App. P. 4(b)(4). Mr. Taylor explained that it took him a while to look through the record. Based on that response, counsel concluded that there wasn't a basis to file an appeal after the deadline passed or otherwise seek relief. Accordingly, he explained to Mr. Taylor that a direct

appeal wasn't available. However, he did inform Mr. Taylor that he could still challenge his conviction by filing a § 2255 petition.

After considering the evidence presented at the hearing, the court finds that Mr. Taylor didn't timely request his trial counsel to file a direct appeal. Both he and his trial counsel testified that Mr. Taylor's first attempt to discuss the possibility of filing an appeal came after the 14-day deadline passed. Moreover, when meeting with Mr. Taylor, trial counsel correctly explained to him that Mr. Taylor's reason for not seeking an appeal sooner didn't constitute good cause nor excusable neglect. *See United States v. Steele*, 126 F. Appx. 752, 753 (7th Cir. 2005) ("Excusable neglect occurs only in unusual circumstances."). Accordingly, the court denies Mr. Taylor's ineffective assistance claim because he has failed to show that he timely told his counsel to file an appeal. *Hirsch*, 207 F.3d at 931.

Moreover, Mr. Taylor hasn't met his burden to show "that he actually requested his attorney file an appeal." *Gant*, 627 F.3d at 681. Although on the key issue of timeliness, both witnesses are materially consistent in demonstrating that any request would have been too late, the court otherwise finds counsel's testimony (describing their meeting after sentencing) more credible than Mr. Taylor's testimony (describing a phone conversation), based in part on their manner while testifying, their recall of facts, and counsel's memorandum that memorialized the meeting. Trial counsel testified that Mr. Taylor didn't actually ask him to file an appeal but, based on the questions Mr. Taylor asked during the meeting, counsel assumed he may be interested in one. However, after trial counsel explained that a direct appeal would be untimely and the government would likely object to it (possibly jeopardizing his plea agreement, which gained the

13

government's standdown on other charges), Mr. Taylor accepted his explanation without further requesting him to appeal. The court must deny his § 2255 petition on this basis.

C. *Hobbs Act.*

Mr. Taylor briefly adds to his petition that his sentence should be vacated because his conduct does not fall under 18 U.S.C. § 924(c). Though this seems not to be proper subject matter for a § 2255 petition, *see Doe*, 51 F.3d at 698, Mr. Taylor cites cases addressing the residual clause in § 924(c)(3)(B) and argues that no element of the offense required the government to prove that Mr. Taylor used, attempted to use, or threatened force [46 at 18 (referencing *United States v. Taylor*, 596 U.S. 845, 851 (2022) (attempted Hobbs Act robbery doesn't satisfy § 924(c)'s elements clause); *United States v. Davis*, 588 U.S. 445, 470 (2019) (holding § 924(c)(3)(B) unconstitutionally vague); *Johnson v. United States*, 576 U.S. 591, 597 (2015) (residual clause in § 924(e)(2)(B) unconstitutionally vague)]. Mr. Taylor writes that he "feels it is more likely than not the court used the residual clause" during sentencing. This is incorrect; the court did not cite or rely on the residual clause at his sentencing. The Supreme Court held that the residual clause was unconstitutionally vague in 2015, long before Mr. Taylor's sentencing in 2023. *Johnson*, 576 U.S. at 597. The court sentenced Mr. Taylor under a different provision that remains good law after *Johnson*. *United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016); *see also Seals v. United States*, 2025 U.S. App. LEXIS 3154, 2 (7th Cir. Feb. 11, 2025) ("Yet our circuit has not overruled its cases holding that armed bank robbery remains a crime of violence under the elements clause."). The court must deny his § 2255 petition on this basis.

CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). Based on the lack of constitutional and procedural violations, no reasonable jurist could debate the conclusions today. The court thus denies a certificate of appealability.

CONCLUSION

The court DENIES Mr. Taylor's petition to vacate his sentence under 28 U.S.C. § 2255 [46], DENIES IN PART his motion to appoint counsel [47], except for the counsel already appointed for the evidentiary hearing [68], and DENIES a certificate of appealability. This order terminates the civil case [3:24cv583].

SO ORDERED.

January 9, 2026                                             *s/ Damon R. Leichty*
                                                            Judge, United States District Court